Okay, this case is number 16, 1537, Golden Bridge Technology Incorporated against Apple Incorporated. Mr. Russo. Thank you, Your Honor. Good morning. I'd ask to reserve five minutes, Your Honor, for rebuttal. Must there be only one and always just one prevailing party in patent litigation? Mr. Russo, it seems the primary argument in your opening brief is that we should reverse Shumby Intel, and you know perfectly well that it's well-established that a prior presidential decision on a point of law by the panel of this court is binding unless it's overruled by the court in bank. So what are you asking us to do? Do you think we have authority to overrule it? No, Your Honor. In fact, it's pretty clear we have to take this step to ask for en banc review or to go to the Supreme Court on this. Respectfully, Your Honor, we think the decision is wrong. It can be- We made that clear, yeah. It can be modified by this court or it can be explained. And the explanation is very simple. In litigation, as in war, there can be winners and there can be losers, clearly. There can also be lose-lose outcomes. We like to talk about in mediation of cases before they get to your court or before they get to the district court, that's the only way to get to a win-win outcome. Well, there are win-win outcomes that do occur, typically not in litigation. There are also lose-lose outcomes that occur in litigation. This is such a case. Are you arguing for apportionment for each party to bear its own cost or for district courts to have the discretion to choose either one? District courts, respectfully, Your Honors, have to have that discretion under most recent Supreme Court authority and even under the logic of the original decisions made by this court that said, look, we think that we should establish special circuit law on costs. At that time, the regional circuits were in disarray. The regional circuits, particularly in light of recent Supreme Court cases, are in complete uniformity that the district judge has total discretion. What happened here is the district court was constrained. Are you saying that we should overturn Shum because its interpretation of Rule 54 is wrong or we should overturn Shum because we shouldn't be applying federal circuit law to that particular procedural question? I think it's actually both, Your Honor. In truth, the original underlying basis of Shum's decision from some 20 years earlier in 1996 that seemed to say, well, we have to go one way or the other. Should we go with the regional circuits or should we go in a different direction? And ultimately, it decided, although it sort of indicated it could go either way, that it was going to establish a special rule for patent cases. What we now see in the Supreme Court is these special rules for patent cases are not the way the Supreme Court jurisprudence is looking at things. Well, that's certainly true on a broad scale basis, but I have a hard time concluding that you're correct when you say octane fitness overrules Shum, because octane fitness was an analysis of 285, which is a special statutory provision relating to patent cases. I agree, Your Honor. But 4D is a broadly applicable rule of procedure.  We may have amplified in saying overruled. It's a policy question, ultimately. It's a policy question for the federal courts. How should the federal... Wait a minute. So you don't think that we're bound to follow octane? No, you are bound to follow octane. The question is, is the reasoning in octane and the premise of octane that the district judges are to be given wide discretion in these areas? They clearly have been given. They've been given wide discretion on attorney's fees, wide discretion on damages. They should have that same discretion on costs. They shouldn't try to figure out, well, I have to go through this methodology where first the federal circuit says it's a federal circuit decision whether someone is, and there must be, a prevailing party. There aren't always prevailing parties. Even if you're right that Shum made a few errors in its analysis, doesn't Shum leave open the very kind of discretion that you're talking about? I mean, it drops a footnote to say, of course, even if you have a prevailing party, you still balance the level of wins for each side, and you still can ultimately award zero costs if you want. So what's the difference? Well, the difference is this, Your Honor. In the Ninth Circuit, and this is where these rules seem to go at odds with each other, we have a federal circuit rule that says first you have to decide under Rule 54 who is, and there must be, only one prevailing party. Then you go to regional circuit law, which in the Ninth Circuit says once you decide that someone is a prevailing party, you should award them costs. And then you drill down to the bill of costs to figure out what goes one way and what goes another. That gating decision with the Ninth Circuit rule makes sense when the Ninth Circuit rule exists that the judge can decide there's no prevailing party. There are often cases that are lose-lose. There are often cases where both parties lose as a result on significant issues. So here the district judge took the straightforward approach and said there's only one prevailing party. And what has occurred to me is, would there be a difference if, for instance, here a suit was brought for infringement, there was an affirmative defense of invalidity? Suppose the example, and there's a prevailing party, there's no infringement. That ends it as far as this judge is concerned. Had a declaratory judgment action been brought for, let's say, invalidity within a counterclaim for infringement, I can see that there would be an interesting question raised. But it is really hard to overcome the reasoning of this court where there was a simple case brought for infringement and a simple affirmative defense, several affirmative defenses. So where is the distinction whereby the affirmative defense would, on your theory, be treated the same way as either a counterclaim or a declaratory judgment? To add to that, supposing the district court said, let me decide the question of invalidity. No infringement. That would have made this easy and wouldn't be up here, clearly, Your Honor. But Apple went the other way. In this case, Apple, after losing on its invalidity defense in front of the jury, made a motion for a new trial. Remember, they didn't have to do that. They didn't have to carry out the proceedings to say, and we actually want a new trial on invalidity. Now, why? This patent is still alive. This patent affects their product line. This patent does have an impact on other iPhone products. So it's not, Your Honor makes a good point, both of you do, that, well, there could be different procedural contexts that perhaps sharpen this issue. But in this case, the issue was just as sharp because Apple pursued the invalidity defense through every mechanism possible. The only thing it didn't do, nor did our client, is take an appeal on the ultimate jury verdict here. They accepted the fact that the— But you made post-trial motions. They did. And so did yourself, did you not? We did. We did. And so you think that that's sufficient to turn the tide as to who prevails? No, it's not about turning the tide, Your Honor. It's really about who has the power to decide what. We think— Well, if the district court had the discretion, and we were here with the district court not having cited Shum and said, I first have to decide if there is a prevailing party at all, and in this case, I decide that Apple's the prevailing party, and then went ahead and awarded costs, would you argue that that was error for Apple to decide that? No. No, I think, Your Honor, then we would be clearly in a situation where the judge said, I have complete discretion to decide if there's no prevailing party. In this case, perhaps it's Your Honor, Judge Newman's dissent in Shum that best explains when you say when plaintiff as well as the defendant have lost on significant issues, courts have generally awarded no costs. That's a decision that could have been made if Shum were not in the way of it. Shum was in the way of making that decision, and it's pretty clear from the district court's opinion that he saw that as constraining him in what he could do. We think that constraint makes no sense under current Supreme Court law, no sense under regional circuit law, and no sense as a matter of policy when district judges are in the best position to decide if it's lose-lose. There are cases that are lose-lose, both parties lost on significant issues, and that patent is still alive, and that patent still has vitality. The invalidity loss was a loss for Apple. Albeit, the judge felt constrained by Shum, as other judges do when they, as you see, sometimes they do, they sort of shoehorn around. The reality is we have a body of regional circuit law that goes in one direction, and we have this court that's going in another in the face of Supreme Court authority that would suggest that district judge discretion is really paramount. Is it your position that no other circuit agrees with Shum? You know, Your Honor, we went through all that we could find, 9th, 8th, 7th, 6th, 2nd, and I think even the 1st, and we couldn't find decisions that cited Shum in other circuits. So we think Shum is out there pretty much as a lone ranger at this point. When you say cited Shum, that they don't have to cite Shum to come out the same way? That's true. That's true, Your Honor. We could not find a case in other circuits that seemed to have this gating approach that the federal circuit has decided to put in the way of district court discretion. It's really as simple as that. I don't have much more to argue. I know that there's arguments that were made that somehow we were supposed to make all these same arguments that we've made on appeal to the district judge. It's pretty clear the district judge was going to follow Shum. The district judge was very careful to explain what its reasoning was. The district judge says perhaps this panel is bound, but at some point, somewhere, somehow, this is going to get reviewed, and we believe the appropriate outcome is district court discretion. We reinstate it fully. If there are no other questions, I'll reserve the balance of my time. Do I have a question? Sure. In the red bracket, note 2, Apple says that GBT is a New Jersey corporation required to but that it, quote, has essentially vanished with the exception of this appeal. Is that true? No, Your Honor. I think it's amazing for the largest company, largest public company in the world, to take the position that a small company that it knows owns a portfolio of patents. In fact, it has since placed liens on GBT's patents to say somehow that there are no assets and it vanished. The company still exists. The company is a New Jersey corporation. It has, unfortunately, had financial stress. There's no question about that. Is there still a registered agent in existence? We believe there is, Your Honor. What do you mean, you believe? Well, I don't have the data in front of me because I'm not the corporate lawyers. I'm just here as the counsel on this appeal, but I think we could supplement and provide you that data, Your Honor. We don't think that GBT's financial distress somehow creates some sort of abandonment argument or somehow that it doesn't have rights to pursue the appeal that it's pursuing here. Okay, let's hear from the other side. Thank you, Your Honor. Mr. Mead. Thank you, Your Honors. Lowell Mead with Cooley LLP on behalf of Apple. So I think, Your Honors, we're hitting on all of the many points why the district court should be affirmed here. Yeah, well, let me just back you up to my last housekeeping matter. I let your opposing counsel go through before I raise it. Does anyone break this sequence? I won't break your sequence. What's your basis for having made that statement? Well, so the essentially vanished is, so there's been a long history since the proceedings that are now at issue here in the record of Apple. So first, it moved actually to execute the judgment, so GBT did not post a supersedious bond to stay execution of the judgment. So as it was entitled to do, so Apple filed a motion with the court. The court ended up issuing an order. However, Apple also moved to take discovery of GBT. So if GBT has not vanished, where are they? The court actually ordered GBT to appear for discovery. Do we have that in the record by any chance? It's in the, it's on, you know, on the docket and on the pacer. I don't think it's in the joint appendix, all of these. That's all right. Yeah, so it is in the record. And there have been additional proceedings after that. So the court ordered it to appear that GBT didn't appear, and actually in order to assign the patents as partial satisfaction, this patent and other patents, the court ordered that GBT didn't even file anything. So the essentially vanished is, you have court orders in the case that you were a party to and you don't respond and don't appear. Yeah, was it a judgment, debt, or exam? Exactly, a judgment, debt, or exam. And the court didn't do anything when its order was violated? Well, the court ultimately ended up ordering, entering an order for GBT to assign this patent and other patents to Apple in partial satisfaction, and also basically prohibit GBT from assigning other financial interests in it, and there's some other terms of the order. So in that respect, yes. All right, but let's proceed to the merits of this. Let's get to the substance of that. Do you agree that no other circuit agrees with our circuit in how to interpret 54D? No, so we disagree with the characterizations on the other side, that this court is a quote unquote lone ranger. GBT doesn't cite one circuit court of appeals decision from any other circuit that actually holds that contrary to the Shum Rule, that two opposing parties can both be the prevailing party under Rule 54. All right, so do you have cases that where courts have specifically said you can only have one prevailing party? So in the cases we've seen and cited by GBT, we didn't see that particular issue teed up, where there was a dispute and resolved in the same way as Shum Rule. Okay, well I'm talking about the cases you found. So we did not, no, I haven't seen that particular issue teed up in the other district courts. I think it's, you know, the language of the rule, and actually I'll point you in a moment to GBT below agreed with that reasoning of what the rule means. Right, I understand that, but let's, so you're saying that you didn't search to see if any other court of appeals ever actually expressly addressed this question? The searching we've done, we didn't see that issue. I can't prove the negative that that issue hasn't been addressed and resolved, but in the cases that we're aware of, we haven't seen that. What about other district court decisions? So the only district court decision that we've seen was cited by GBT, so there's a central district of California case, the Anderson case cited in GBT's blue brief. So in that case, it was very unique facts where essentially it was not disputed. It had multiple, multiple different plaintiffs all had various claims against the defendant. One of the plaintiffs prevailed, but it was essentially an anomaly for $8,000 judgment and then submitted costs in addition to the defendant submitting its own costs. And in that case, the defendant didn't dispute the amount of costs of that plaintiff, so it was essentially undisputed points. It didn't address and resolve this issue. What about the threshold question? Should this be a patent-specific rule when we're talking about the interpretation of Rule 54D, or should we be following the regional circuits? So in this particular case, in the fact pattern in this case, this was just a straightforward, as clean and simple as that. I get that. Let's assume we're just talking hypothetically. We're going to write a law review article. Should we be applying regional circuit law or federal circuit law to interpretation of a procedural rule? So in the case of the only claim is a patent infringement claim, then the prevailing party issues that would be specific to patent law. How do you determine who prevails? And this court's weighed in on that. The Kensalbaugh case, the Brooks Furniture case cited by the district court, that would be a federal. So in a case where you only have a patent infringement claim and that's it, like this case, it does make sense that it's a federal circuit issue, that this court is equipped to provide uniformity on the patent-specific decision of who prevailed. Because, as this court is well aware, claim construction, invalidity, and non-infringement can be intertwined, as they actually were in this case. But you had a D.J. for invalidity. It wasn't just a defense, right? So the trial court had to decide it. We did have a D.J., and just like this court has addressed in the Brooks Furniture case, it was actually not only a D.J., but the accused infringer was the one who filed the lawsuit with a D.J. claim of invalidity as well as non-infringement, ultimately prevailed only on the non-infringement. The patent was left valid. So filed the lawsuit, lost the claim. But you could have walked away from your invalidity request. So in this case, as in probably most cases of this nature, so the invalidity issue was simply a response. So the issue in the case was, is Apple liable for infringing this patent, yes or no? And so Apple raised various defenses, also counterclaims, essentially as a procedural point, and different ways to get to that outcome of no liability. And I'll note that, as counsel for the other side noted, Apple did file a motion for a judgment as a matter of law after the trial and hasn't appealed. And that illustrates what's going on here is not seeking to bring its own claim. Apple is not seeking to bring its own claim, to just reach out and validate this patent, other than securing no liability. So when GBT didn't appeal the non-infringement verdict, and so the merits are basically done, Apple has no liability in this case. That's settled. There's no reason for Apple to then essentially burden this court in itself and GBT with an appeal on the invalidity. Are you going to auction that thing off? So the claim on the patents, I can't speak to the plans, but that's been recorded with the Patent Office, the ownership claim. So happy to answer any other questions. I did want to address a few points that were raised just to make sure they're covered in the record here. So one of which is on the waiver issue, so there's multiple levels really of waiver here. One is, as Your Honor pointed out, there's a procedure for en banc review that no petition was filed here, Rule 35. The court's well aware of that. In addition, the waiver on the facts of this case, Apple's red brief pointed out on the facts of this case, GBT went out of its way below to make clear it's not arguing it's a prevailing party or even partially prevailing. But what I want to point out in addition to that, with the argument GBT was raising that essentially everyone was constrained below and the Shum issue never came up. So in the joint appendix on that same hearing where the parties discussed, or GBT made clear from the outset, hey, we're not arguing, we're prevailing. So joint appendix pages 1186 to 1187. So first, the court was essentially asking GBT, I want to clarify the interpretation of law you want me to apply here. So first, ask about discretion. So ask GBT, so I have within my discretion under the federal rule, I have the authority or the discretion to consider the relative success or lack of success of each party correct. And then continued, even though the rule clearly requires me to figure out which side prevailed because there can be only one prevailing party under the rule. GBT responds, right. Those are two different analyses to undertake. That's correct, Your Honor. Okay. And so this issue couldn't have been more squarely raised. The court said, and this is on page 1187 of the joint appendix, the rule requires me to figure out one prevailing party and there can only be one. Is that correct? Correct. So this is a classic waiver issue. If GBT wanted to argue as it does now, just take another bite at the apple and change the law, they had the opportunity to do that. Another bite at the apple? So to speak. Feeling like Judge Laurie is in the room. Okay. So happy to address any of the other points. I think, Your Honors, we're hitting the points that we wanted to raise. The octane fitness issued in 2014, again, that's a waiver. If they wanted to raise that below, by the 2015 hearing below, that should have been raised. Eighteen months before. Right. And that's the Rentrop case cited in Apple's red brief, right. So jury trial, KSR, rulings, need to raise it at the time before the district court. So I think we talked about the regional circuit court. There isn't a material difference. This court is not the Lone Ranger. It's made clear that costs can be discretionarily not awarded to either party. And we haven't seen a case, at least, that is directly contrary to the Shum Rule. And so finally, with respect to if there's any interest, you know, the Shum Rule, as Your Honor pointed out, Judge Newman, there could be hypothetical cases. So the Shum case itself was one example, right, where you had a much more complicated scenario. Many different claims and prevailing kind of mixed bag on both sides. And Your Honor's dissent in that case pointed out, you know, there should be, you know, maybe the plaintiff was the one who should have been awarded the prevailing party status there. And the dissent, your opinion, did not have any disagreement with the actual application of the statute, the interpretation. So unless there's anything else, I'm happy to rest. Anything else? Okay, thank you. Thank you, Mr. Mead. Mr. Russo, your brother refers to RENTRA, which says, when there is a relevant change in the law before entry of final judgment, a party generally must notify the district court. If the party fails to do so, it waives arguments on appeal that are based on that change in law. And as I said, Octane was decided 18 months before, and GBT didn't raise any arguments regarding the applicability of Octane before the court. Right, Your Honor. How do you deal with RENTRA? I think it was pretty clear that the district court was going to follow federal circuit law and was not going to, on its own, say Octane or HALO or other cases that were subsequently decided. That's not answering my question. We didn't. I confirm, we didn't. And you conceded here that really, Octane doesn't control. No, Octane, the policy under Octane controls here, Your Honor. Let's go to the transcript, because that's pretty deadly for you. I mean, to say to the judge twice that you're not arguing that you're a prevailing party or even a partial prevailing party, and to say to the judge that, yeah, there only can be one, how can we say that you've preserved this argument that some should be reconsidered and that there should be more than one prevailing party allowed or zero prevailing parties found? Because we retained the argument as we stated to the judge that there can be no prevailing party, that it can be lose-lose. It's not a situation where it's they won everything, we won something, they won, we won nothing. We retained the point about discretion, Your Honor. You're correct that we didn't raise the policy arguments that we believe here are controlling on what happens with Shum, nor did we say, well, we think that Shum affords an exception that perhaps now could be found that says district judges always retain the ability to say there's no prevailing party, no one clearly. Everyone lost. That's our view here. And we'd like to give, Your Honors, if you'd allow it under Rule 28, citations to the other cases in the regional circuits that we think is supportive, and we will get the support for agent for process and all of that if you need that. Why didn't you do that in your brief? Well, Your Honor, we didn't see that as really controlling on what happens on a disposition on appeal, but clearly that's something that Apple is raising. No, you raised it. How do you get away with not paying these costs when you didn't post a bond? Your Honor, if a company doesn't have the cash to pay, what does it do? It can't afford it. Well, how are you affording an appeal? This is pro bono work by me and my firm at this point, Your Honor. That's just a fact of life. That's the reality. That happens with some litigation. That's the reality of this particular appeal and this particular litigation. Okay. Any more questions? No. Thank you, Mr. O'Shaughnessy. Thank you, Mr. B. The case is taken into submission.